EASTERN DIST.
June, 1835.

HICKS, ADM'R.
vs.
POPE.

by an heir a-
gainst his co-
heirs, to provoke
a new partition,
will not lie.

---

## HICKS, ADMINISTRATOR, *vs.* POPE.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The law of the domicil of a persons inheriting, will govern in relation to the rights of the inheritance.

So where a slave is inherited by the wife from her father, in Alabama, which if reduced to possession by her husband, domiciled there, would have become his absolute property; but the domicil of the husband and wife being in Louisiana at the time, every thing falling by inheritance to the wife, becomes her separate property.

EASTERN DIST.
June, 1835.

HICKS, ADM'R.
vs.
POPE.

This is an action of revendication. The plaintiff as administrator of the succession of the late Reddin Pope, claims a mulatto girl, slave, which he alleges belongs to the estate he administers, and is now in the possession of the defendant, the widow of the deceased, which she claims as her own separate property.

The evidence shows that Reddin Pope married Eliza Youngblood, (the defendant) in the state of Alabama, where they resided several years and then removed to Louisiana. After their removal to this state, the father of the wife died in Alabama, and the slave in question was allotted to her as her portion of the inheritance, and brought to Louisiana, where she remained until the death of the husband.

The administrator claims the slave as making part of the husband's estate. The defendant retains her as her individual and separate property, which she inherited from her father, since she has resided in this state.

It is admitted slaves are personal property in Alabama, where the common law prevails, and that when reduced to possession, become the property of the husband.

Judgment was rendered in favor of the defendant. The plaintiff appealed.

*Lawrence* and *Winthrop,* for the plaintiff, contended, that as the slave was acquired in Alabama, where, on being taken into possession by the husband, was his absolute property, the laws of that state should govern in determining the rights of the parties in this case. 5 *Martin, N. S.,* 569. 7 *Ibid.,* 41. 2 *Kent's Commentaries,* 426. *Story's Conflict of Laws,* 312.

*Preston, contra.*

*Mathews, J.,* delivered the opinion of the court.

In this case the plaintiff as administrator of the succession of Redden Pope, claims to recover from the defendant a female slave in her possession, as making a part of the estate of the deceased, who was her husband by a marriage contracted in the state of Alabama. There was judgment

EASTERN DIST.
June, 1835.

HICKS, ADM'R.
vs.
POPE.

The law of the domicil of persons inheriting, will govern in relation to the rights of the inheritance.

So, where a slave is inherited by the wife, from her father in Alabama, which, if reduced to possession by her husband, domiciled there, would have become his absolute property; but the domicil of the husband and wife being in Louisiana at the time, every thing falling by inheritance to the wife, becomes her separate property.

for the defendant in the court below, from which the plaintiff appealed.

The facts of the case are as follows: the deceased married the defendant in Alabama; in that state slaves are personal property, and by its laws the husband *ipso facto* by marriage, acquires a complete right and title to all the personal property of his wife. The married parties moved from the place of their marriage to the state of Louisiana, and were here domiciled at the time of the death of the father of the wife, who died in the former state; and the slave in question was inherited from him by the defendant; was brought into this state previous to the death of the husband, and remained in his possession as head of the family until his death; but, from that period has been held by his widow who now claims title by inheritance from her father.

These facts present a question arising *ex conflictu legum.* According to the laws of Alabama where the father was domiciled, and where the property was at his death, if it had been reduced to possession by the husband it would have been his absolutely, had that place been the domicil of him and his wife. But they had changed it to the state of Louisiana, according to the laws of which, every thing falling by inheritance to the wife became her separate property. Which of these laws must govern and control the rights of the parties? Those of the place where the succession was opened, or those which prevail in the place of the domicil of the heir?

We are of opinion that the rule of our decision must be taken from the latter. It has been long settled by the jurisprudence of this country, that notwithstanding marriages may have been contracted in other states, the rights of the married persons after being domiciled in this, are governed by its laws in relation to all property acquired during their residence here, so far at least, as they have reference to *acquests and gains* which form the matrimonial community. If a husband and wife be placed in this category and the first should acquire personal property by purchase in another

state, it would, perhaps, at the moment of acquisition form a part of the matrimonial community, even before it was brought into the place of the domicil of the partners. This doctrine is a necessary consequence of the maxim adopted by eminent civilians that *in domicilii loco mobilia inteligantur existere.*

The maxim thus adopted, although expressed in various phraseology by different writers, seems to be received as well founded by them all, notwithstanding the doubts and perplexities which are found in making a clear distinction between statutes real and those which are personal. See *Story's Treatise on the Conflict of Laws, page 308 et sequentes.*

If this rule be sound in relation to personal property acquired by purchase, we can see no good reason why it should not be considered as equally sound and valid in relation to that which may be acquired by inheritance, and its destination be directed by the laws of the domicil of the heir.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

---

## MILLAUDON vs. ATLANTIC INSURANCE COMPANY.

8L 557
49 661₁

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF NEW-ORLEANS.

Where the plaintiff took out a policy of insurance against fire, " on his goods, *stock in trade*, &c." : Held, that the policy covered goods in stores bought on joint account and sold for the mutual profit of the *insured* and another person, the former being also in advance on the adventure: *Held,* also, that the insured was absolute owner of one-half of the goods in the store, had an insurable interest in them as "*stock in trade,*" and also to cover his advances on the whole stock.

EASTERN DIST.
June, 1835

MILLAUDON
vs.
ATLANTIC INS. CO

This is an action on a policy of insurance against fire, subscribed by the defendants. The plaintiff alleges he took out a policy of insurance, in the office of the defendants, on the 2d of September, 1834, insuring him from loss or damage by fire, " on goods, being stock in trade, on consignment, or held in trust," contained in five tenements or stores, on the corner of Commerce and Julia streets. That said stores and goods therein were destroyed by fire on the night of the 25th of October following, during the continuance of the policy, in consequence of which he sustained a loss of ten thousand dollars, in the destruction of the goods insured, for which the defendants are liable, according to an annexed account.

The defendants excepted to the action, on the ground that the matter in dispute was not submitted to arbitrators, according to the terms of the policy, and denied that they ever refused such submission, but that they are and were ready to do so.

In their answer, the defendants deny that the plaintiff sustained any loss or damage covered by said policy ; that the goods alleged to have been in store and destroyed, were not in fact *in said stores* at the time of the fire, nor owned by him, held on consignment or in trust ; and if they were, which is denied, the said policy does not cover them, because of the non-compliance with the first article of the conditions of insurance.

Upon these pleadings the parties went to trial. Such facts as are deemed material to a clear understanding of the points of law discussed, are extracted from the case below.

The policy upon which suit is brought, stipulates as follows :

" That Laurent Millaudon has paid the sum of fifty dollars to the Atlantic Marine and Fire Insurance Company, for insurance against fire, (according to the tenor of the conditions annexed) not exceeding in each case the sums hereinafter recited, upon the property herein described in the places herein set forth, and not elsewhere, &c., *on goods, being stock*

*in trade*, or on consignment, or held in trust, contained in five tenements, situated at the corner of Commerce and Julia streets, in New-Orleans, No. —, twenty thousand dollars."

### "CONDITIONS."

"*Article* 1.   Persons applying for insurance on buildings, are to deliver into the office the following particulars, viz : of what materials the walls and roof of each building are constructed, as well as the construction of buildings contiguous thereto ; whether the same are occupied as private dwellings, or how otherwise ; where situated, also the name or names of the present occupiers.   A separate sum must be insured on each building, and if there should be any other building or dependency on the lot than those described, then such building or dependency is not covered by this policy, even though the same be connected with the building described.

In the insurance of goods, wares or merchandise, distinct sums should be specified under the following heads : stock in trade and utensils, household goods and linen, &c. ; also, whether such goods are of the kinds denominated *hazardous,* and whether any manufactory is carried on in the premises, and if any person or persons shall insure his or their buildings or goods, and shall cause the same to be described in the policy otherwise than as they really are, so as the same be charged at a lower premium, such insurance shall be of no force.    Pitch, tar, turpentine, saltpetre, gunpowder, flax, hemp, oil and tallow, are denominated *hazardous.*

"*Article* 2.   Goods held in trust, or on commission, are to be insured as such, otherwise the policy will not cover such property."

The evidence showed that the goods in question were purchased by William T. Thompson & Co. (Thompson & Millaudon,) and the money furnished by Millaudon to pay off the notes.   The notes were drawn by Thompson to the order of Millaudon and by him endorsed and paid, and the

EASTERN DIST.
June, 1835.

MILLAUDON
vs.
ATLANTIC INS. CO

amount passed to Millaudon's credit. It was stated in the books of Thompson, "*Adventure in co. with Laurent Millaudon.*" That the prices charged in the account annexed to the petition, were the current price for which the merchandise destroyed, sold at the time. This account was proved by witnesses. The amount due for loss claimed is nine thousand three hundred and ninety-four dollars seventy-four cents. The same amount being also claimed from the Mississippi Insurance Company, where an insurance on the same goods was also effected.

The cause was submitted to a jury, under a charge from the judge presiding, which was excepted to by the defendants. The jury returned a verdict for the plaintiff for the sum claimed. From judgment rendered thereon, the defendants appealed.

*J. Slidell,* for the plaintiff.

1. The rules regulating the contract of indemnity in fire insurance are the same as in marine insurance. *5 Johnson's Rep.,* 373. *Phillips on Insurance, page 320.* De Forrest *vs.* the Fulton Fire Insurance Co., 1 *Hall's Rep.* 84, 111, 113. The plaintiff had clearly an insurable interest to the full value of the goods under the terms of the policy, which covered goods held on trust, but if there can be any doubt on this subject, all the authorities concur in stating that every person having a lien has an insurable interest to the extent of that lien in this case. Millaudon having paid for all the goods which were placed in a warehouse belonging to himself and entirely subject to his control, is entitled to secure the full value of the goods. *Phillips on Insurance, page* 41, 43, 44, 45. 1 *Peters's Rep.* 163. 13 *Massachusetts Rep.* 65. 1 *Hall, page* 102, 126, 127.

2. The value of the goods destroyed was a question of fact which was properly referred to the jury. Their verdict is fully sustained by the evidence. This court, in conformity with its repeated decisions, will not interfere with it unless manifestly erroneous.

*Peirce* and *Sterrett,* for the defendant.

1. The evidence of plaintiff proves neither the amount of the goods nor their value. The testimony of defendant disproves any presumption that might arise from the statement of the book-keeper, who testified to the account and the purchase and loss of the goods.

2. The insurance being made on the same interest as was made in the Mississippi Insurance Company, if fully indemnified by the latter, he has no recourse; however, the Mississippi Insurance Company may have.

3. By his statement he has settled for all but a little over three thousand dollars, if he has insured but his own interest in the goods, to wit: one-half of the amount he claims.

4. He insured but his own interest; this was all his stock in trade.

*Bullard, J.,* delivered the opinion of the court.

The present action is brought upon a policy subscribed by the defendants, by which they undertook to insure the plaintiff from loss by fire, on goods, being stock in trade, on consignment, or held in trust, contained in five tenements situated at the corner of Commerce and Julia streets, twenty thousand dollars, the same sum having been previously insured on the same, at the Mississippi office.

The defendants, after setting up an exception, which was overruled, and which we will notice afterwards, deny that the plaintiff has sustained any loss or damage covered by the policy; and aver, that the goods stated by him to have been in the stores, at the time of the fire, were not, in fact, there; that they were neither owned by him nor held on consignment, or in trust; and that, even if they were, which is denied, the said policy does not cover them for non-compliance with the first article of the insurance.

Where the plaintiff took out a policy of insurance against fire "on his goods, *stock in trade, &c.:*" *Held,* that the policy covered goods in stores, bought on joint account, and sold for the mutual profit of the *insured* and ano-

71