Succession of ALICE PACKWOOD—SAMUEL PACKWOOD, Executor, Appellant.

Where a husband and wife, married in another State, removed into this, the laws establishing and regulating the matrimonial community of gains, will operate upon the property acquired during their residence here; and where they subsequently remove from this State, its laws will not operate upon property afterwards acquired here, such acquisitions becoming the property of the party to whom they may belong according to the law of the new domicil of the spouses.

The executor of the will of one who was domiciliated and died in another State, deriving his powers from a Probate Court of this State, administers only on the property of the deceased situated here; and that part of the estate of the testatrix only is under the control of the courts of this State.   Property belonging to the testatrix in another State descends, and must be administered under its laws.

Where the husband and wife remove into another State, the former will still retain the right of administering property acquired by the community during their residence in this State; and he will continue to be entitled to enjoy the fruits of the dotal property.   The removal into another State does not vest in the wife any distinct and separate title to one half of the community property.   On her death, one half of the community property acquired in this State, will vest in her heirs, subject to the payment of the debts contracted by the husband during the marriage.   Till that time the husband retains entire control of the property, subject to the restrictions imposed by the Civil Code on his power of alienation, when in fraud of the rights of the wife.

The law establishing and regulating the matrimonial community of gains is a real statute, operating, where the parties were not married in this State, only on property acquired here.

As a general rule personal property has properly no other *situs* than the domicil of the owner, and its disposition or transmission, by contract, or inheritance, depends upon the law of the owner's domicil, saving the rights acquired by creditors by attachment, or otherwise, before delivery or notice.   This is especially true of debts which follow the person of the owner or creditor

The deceased and her husband, having removed from this State, resided in another at

the time of her death. A part of a crop raised on a plantation belonging to the community in this State, having been sold by an agent here before the death of the wife, was deposited to the credit of the husband in a bank in this State, and the proceeds subsequently remitted to him in negotiable certificates of deposit. *Held*, that the produce of the plantation, no longer existing in kind, but having merged in a debt due from the bank, could not be identified; that the amount deposited became the property of the husband, at the place of his domicil; and that its distribution, or inheritance, depends on the law of that place. Had the crop remained on the plantation, unsold at the death of the wife, it might have been otherwise.

APPEAL from the Court of Probates of New Orleans, *Bermudez*, J.

*Lockett, Micou*, and *A. Hennen*, for the appellant.

*Wilde, Roselius*, and *Mazureau*, contra.

BULLARD, J. In order properly to understand the question which this case presents, it is necessary to premise, that Samuel Packwood, and his late wife, Alice Packwood, were married in the State of Connecticut, and, in the year 1804, removed to Louisiana, where they resided until 1836, and acquired a considerable property, consisting of a plantation and city houses and lots, in community, according to our local law. That, in 1836, they returned to the north, and fixed their domicil in the city of New York, where the community of *acquets* does not exist. One undivided half of a large plantation in the parish of Plaquemine, was sold to their son, Theodore J. Packwood, who is still in possession. That, Mrs. Packwood died in New York. in the summer of 1840,* and Theodore J. Packwoad was appointed to administer on her estate situated in Louisiana, where her heirs-at-law reside, and caused an inventory to be made. A testament of Mrs. Packwood was subsequently produced, by which she appointed her husband, Samuel Packwood, her executor, and he qualified as such in the Court of Probates of the parish and city of New-Orleans, and proceeded to have a new inventory made. In neither of these inventories is any part of the plantation in Plaquemine included. At this inventory, the executor made the following declaration, in substance, which was embodied in the act, to wit : That, at the death of his wife, he

*The record does not show the day or month.

and his said wife resided, and had resided for several years in New York, where the community of *acquets* does not exist by law. That, at that time, he was the owner of three hundred shares of the city stock, and one hundred and two and a half shares of the country stock of the Union Bank of Louisiana, and of $14,747 77 in cash, deposited in the Commercial Bank to his credit on the 30th June, 1840, and for which negotiable certificates of deposit were remitted to him, on the 27th of July, 1840; and he declared that the said stocks and money are governed by the laws of New-York, the place of his domicil and that of his wife, and are his exclusive property, and form no part of the community lately existing between him and his late wife in Louisiana, and that no part belongs to her succession.

The question which alone is presented for our solution on the present appeal, is, whether this sum of $14,747 77 belongs to the community, and is to be considered as a fund in the hands of the executor, applicable to the payment of the debts of the community, one half of which are due by the estate of Alice Packwood in Louisiana. The question arises in the following manner. The executor having presented a statement of debts for which provision was to be made, which was approved, next presented a petition, in which he represents, that the debts amount to upwards of fifteen thousand dollars; that the real estate, lately held in common between himself and the heirs of his wife, had been divided, under a decree of the District Court for the First Judicial District, and that the estate of his wife had thus become sole proprietor of certain property designated and described in the act of partition; that there is no more property belonging to the estate; and that it becomes necessary to sell a part of said property to pay the debts; and he prays for an order to that effect, contradictorily with the heirs.

In answer to this petition the heirs allege, that the partition alluded to is imperfect and provisional only, and that the executor has nothing to do with the payment of the debts mentioned by him. That, if the court should be of opinion that he has still the power of seeing that any debt due by the estate of the testatrix be paid, when he is not sued for the same in his said capacity, and when a partition has taken place as he alleges, yet

there is no reason why any part of the property should be sold for the payment of said debts, because the executor has in his hands more funds belonging to the estate, than are necessary to cover the whole amount of said debts, which he has received since the death of the testatrix; which funds consist, among others, of $14,000 and upwards, of which one-half belonged to the estate of Mrs. Alice Packwood, and was in this city at her death, and which he has since received.

The answer proceeds to set forth other amounts which it is charged belong to the estate, but which it is not now necessary to detail, because the only question now before us, as remarked above, relates to the ownership of the sum of upwards of $14,000, deposited in the Commercial Bank; all other questions to which the case may give rise, being reserved for future consideration.

The Court of Probates sustained the opposition of the heirs, being of opinion, that the sum above mentioned was community property, and applicable, in the hands of the executor, to the payment of the debts, and refused to order a sale of any part of the property for that purpose, and the executor appealed.

The facts shown by the record, in relation to the deposit in the Commercial Bank, are, that W. G. Hewes was the agent of Sammuel Packwood, then residing in New-York, and of the sugar plantation of Packwood, for the purpose of selling the sugar produced on the place. On the 25th July, Hewes had in his hands, belonging to Packwood, the above mentioned sum, which had been passed to his (Samuel Packwood's) credit, by order of Theodore J. Packwood, and which he remitted to Mr. Packwood in New-York, on the 27th of July, of the same year, in certificates of deposit in the Commercial Bank. The above was a balance due, after deducting $398 27, due by Packwood to Hewes. It was the proceeds of the sale of sugar raised on the plantation managed by T. J. Packwood. Mrs. Packwood died in New York, after the sale of the sugar, and after the balance in the hands of Hewes had been placed on deposit in the Commercial Bank.

Numerous questions have been raised at the bar, springing out of the law of community as it now exists, and formerly ex-

isted according to the Spanish law, and relating to the conflict of laws. They have been argued with great ability and learning. Upon many of these questions the present controversy, narrowed down as it is to an enquiry into the true character of the credit in the Commercial Bank, does not require a decision from us. We may assume the following propositions, believed to be incontestable, as the basis of our reasoning on the point presented for our solution.

*First.* On the removal of Packwood with his wife, to reside in Louisiana, in 1804, the laws in force at that time establishing and regulating the matrimonial community of gains, operated upon the property acquired during their residence here, it becoming property of the community.

*Second.* On their change of domicil, in 1836, by returning to reside in a State where a different law prevails, the law of Louisiana ceased to operate upon acquisitions of property, made afterwards here, where neither party resided, whatever may be the effect of such removal as to property previously acquired during their residence; and consequently, if Packwood had acquired property here after his removal to New York, it would have been his, according to the law of his domicil.

*Third.* The executor of the last will of a testator who was domiciliated and died in another State, deriving his powers from a Probate Court of Louisiana, administers only on the property of the deceased situated in Louisiana. That part alone of the estate of the testator is under the control of the courts of this State. Whatever estate, therefore, Mrs. Packwood may have left in New York, is to descend, and to be administered according to the law of that State.

Another proposition has been contended for by the counsel for the appellees, which, it is supposed, would have an important bearing on the decision of this cause, to wit: that on the removal of Packwood and his wife to New York, the community which existed between them here ceased not only as to future acquisitions, but that the parties became vested at once, each with one undivided half, and the power of the husband was terminated in relation to it. We are not prepared to subscribe to this doctrine, to its full extent. It would go to exonerate pro-

perty acquired here, from liability for debts contracted afterwards during the marriage; it would authorize the wife, no longer a resident here, but still subject to marital authority, to assert her rights, independently of that authority, to require a liquidation of all debts due by the husband, distinguishing between those contracted in Louisiana, and those contracted elsewhere; it would deprive the husband, while the marriage still exists, of the fruits of the property acquired here, upon which the expenses of the family are an essential charge; in short, it would lead to all the consequences which by law follow from natural death, divorce, or separation from bed and board. We cannot doubt the authority of the husband, after his removal, to administer the property acquired here, any more than his right to enjoy the fruits of the dotal property; and we cannot recognise in Mrs. Packwood any distinct separate title, vested in her before her death. One half of the property acquired in Louisiana then vested in her heirs, subject to the payment of the debts contracted by the husband during the marriage. Up to that period the husband had, in our opinion, entire control over the property, subject to the restrictions in the Code upon his power of alienation in fraud of her rights.

The three propositions above stated may be regarded, in fact as corollaries from the principles settled in the leading case of *Saul* v. *His Creditors*, that the law establishing and regulating the matrimonial community of gains is a real statute, operating only upon property acquired here, followed by that of *Cole's Widow* v. *His Executors*, in which last case the court said: "We cannot take into our consideration the property in New York; our statute is real, and, where the parties are not married here, can only act on property found in Lousiana; that which is in our sister State, will follow its laws." 7 Mart., N. S. 71.

We regard it also as a well settled principle of law that personal property has properly no other *situs* than the domicil of the owner, and that its disposition and transmission, by contract or inheritance, depends upon the law of the owner's domicil, saving rights acquired by creditors by means of attachment, or otherwise, before delivery or notice. As a general rule, we

consider this as settled. We so recognised it in the case of *Oliver* v. *Townes*, 2 Mart. N. S. 93.

A remarkable case, illustrative of this principle, was produced during the argument from Bouhier on the Customs of Burgundy, of a Florentine, who was domiciled in France during the civil wars, and who remitted on deposit to Florence, his native country, a certain sum of money. He died in France, and his heirs there claimed the deposit.. The depositary contested their right on the ground that, according to the laws of Florence, he was entitled to retain it as heir ; but the tribunals decided in favor of the heirs according to the law of France. Bouhier, Coutume de Bourgoyne, 640. This doctrine is especially true of debts, which clearly, according to all the authorities, follow the person of the owner, or creditor. Story's Conflict of Laws, No. 362.

A just application of these principles to the case now before us, solves the only question which it presents. During the life time of Mrs. Packwood she could not be considered as having any right in or title to the sugar, which was sold by William G. Hewes, although it may have been the fruit of property destined to be divided, as belonging to the community, upon its dissolution. It was sold before her death ; it was disposed of by the agent of Packwood, who resided in New York as well as his wife ; the proceeds constituted a debt due first by Hewes, the agent, and afterwards by the bank, as depositary, to Packwood. That it might have been attached or levied on as his property, at any moment before its transmission to New York, we have on doubt. It was, therefore, the property of Packwood in New York, the place of his domicil. The fund in the bank cannot be identified with the sugar, even supposing the sugar to have belonged to the community, and the succession of Mrs. Packwood entitled to one half. It no longer existed in kind ; it could no longer be identified ; it had merged in a debt due by the Commercial Bank, according to the principles settled in the case of *Stetson & Avery* v. *Gurney*, 17 La., 162. It was due to her, and belonged to her at the place of her domicil, where she died, and not in Louisiana. Its distribution, or inheritance depends on the law of New York ; and if Packwood be indebted for it to the estate

of his wife, it is not due here, nor to be administered upon here as a part of the estate of Mrs. Packwood, but as composing a part of her succession in New York.

Whether we regard that fund, therefore, as belonging either to the husband, or to the wife, or to both, it was equally beyond the reach of our laws. It was subject to the controlling influence of the laws of their common domicil. In contemplation of law, it was not here at the time of the death of Mrs. Packwood. If, at that time, a crop raised upon property belonging to the community, had been on the place unsold, it may have been likewise common; but its proceeds in money, due first by an agent, and next by a bank, to the husband residing in New York, cannot, in our opinion, be put down as a part of the assetts of the estate of Mrs. Packwood, in the hands of her executor in Louisiana, to be administered here.

But it is urged, that our laws must govern in relation to the disposition of property situated here; and article 483 of the Civil Code is cited, which declares that, "persons who reside out of the State cannot dispose of the property they possess here, in a manner different from that prescribed by its laws." The case of Senac's will is referred to as illustrating that doctrine. 2 Robinson, 253.

This last case refers wholly to dispositions *mortis causâ*; and the court was called on to interpret the 10th article of the Civil Code, and to decide whether a will made here, the testator having become afterwards domiciled in France, and died there, was revoked by the subsequent birth of a child, according to the law of Louisiana, or whether it was to be governed by the law of France. We held that, although in general the effect of acts passed in one country to have their effect in another, is to be regulated by the laws of the latter country; yet, in relation to testaments and donations in prospect of death, this does not hold, where the testator or donor resided abroad, both when the act was executed and at the time of his death. But in the case now before us, the difficulty lies deeper. It is, that Mrs. Packwood did not possess this fund in Louisiana; if any part of it belonged to her, it was her's in New York, and the case is illustrated by that of *Hicks' Administrator* v. *Pope*, 8 La., 554.

In that case, the husband and wife resided in Louisiana, although married in Alabama, where the personal property of the wife, *reduced to possession*, becomes the property of the husband. The slave, which formed the object of that controversy, had belonged to the father of the wife, who died in Alabama, and she inherited ; he was brought into this State, and remained in possession of the husband during his life. He did not get possession in Alabama, but here ; and the court held, that the law of the domicil of the heir would govern, and that the wife acquired, by inheritance, according to the law of Louisiana. The court there said : " It has been long settled by the jurisprudence of this country, that, notwithstanding marriages may have been contracted in other States, the rights of the married persons, after being domiciliated in this, are governed by its laws, in relation to all property acquired during their residence here, so far, at least, as they have reference to *acquets* and gains, which form the matrimonial community. If the husband and wife be placed in this category, and the first should acquire personal property by purchase in another State, it would perhaps, at the moment of acquisition, form a part of the matrimonial community, even before it was brought into the place of the domicil of the partners. This doctrine is a necessary consequence of the maxim adopted by eminent civilians, that ' *in domicilii loco, mobilia intelliguntur existere.*' "

Upon the whole, we conclude that the court erred in discharging the rule.

It is, therefore, ordered and decreed, that unless the heirs of Mrs. Alice Packwood pay one-half of the debts of the community, as shown by the statement made by the executor, or place funds for that purpose in the hands of the executor, within sixty days after the notice of this decree, the executor proceed to sell, according to law, a sufficient amount of property to pay the same; and that the appellees pay the costs of both courts.